[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel and proceeded on plaintiff's complaint dated April 14, 1994. CT Page 9213
Having heard the evidence, the court finds as follows:
The plaintiff, whose maiden name was Joslin, and the defendant intermarried at Rome, New York, on May 5, 1956. The plaintiff resided in the State of Connecticut for a period of twelve months next preceding the date of the filing of this complaint. There are no minor children issue of the marriage, and no minor children have been born to the plaintiff since the date of the marriage. The marriage has broken down irretrievably without any hope of reconciliation. All statutory stays have expired, and the court has jurisdiction.
The plaintiff and defendant have three adult children from their marriage.
After the marriage, the parties lived with defendant's parents. She felt miserable and was unhappy in her marriage. She felt isolated, restricted and controlled by the defendant. However, when the parties moved to Connecticut to be near their son, the parties had the marital residence built in the Town of Ledyard. The marriage did not seem to get any better for plaintiff.
The plaintiff, who had suffered childhood abuse, began counseling with Dr. Eaton and continued with such counseling for approximately five years. Because of their marital problems, plaintiff and defendant engaged in some marriage counseling with Dr. Eaton. The counseling had no effect on the attitude of the plaintiff to her marriage.
In November 1992, plaintiff left the marital home. That evening, she engaged in sexual activity with David Shippee, whom she had met previously. After many years of marriage, plaintiff felt that she needed sex and emotional support from someone other than her husband.
Although plaintiff informed defendant of her relationship with David Shippee, the defendant still loved the plaintiff and wanted the marriage to continue. Plaintiff, who continued with her counseling, returned to the marital residence and occupied an upstairs bedroom, which she described as her private space.
Although plaintiff returned to the marital residence, she continued her relationship with David Shippee. She rented a CT Page 9214 post office box in Mystic, Connecticut, so as to receive mail from him without the defendant's knowledge. The plaintiff was not honest with the defendant about her affair with and feelings for David Shippee.
The defendant, who felt threatened by plaintiff's relationship with David Shippee, went into plaintiff's bedroom and read her private journal, which contained entries about her relationship with and feelings for David Shippee.
Plaintiff, who felt that this was an invasion of her privacy, left the defendant in March 1993. She instituted this action in April 1994.
The plaintiff is most at fault for the breakdown of the marriage. Plaintiff's affairs with David Shippee, though she claimed it was not the cause of the breakdown, certainly weakened any chance of reconciliation. Notwithstanding plaintiff's affair with David Shippee, the defendant, who still lived with the plaintiff, wanted the marriage to continue. Defendant now feels otherwise. Accordingly, a decree dissolving the marriage of the parties is ordered.
The plaintiff, who was born July 23, 1936, maintained the home and was not employed until her present employment at Franklin Regional Center in Westerly, Rhode Island, a day care service for retarded persons. She works twenty (20) hours per week and earns $170 gross per week.
In 1979, plaintiff continued her education and received a bachelor's degree in social studies. She is interested in obtaining her master's degree and is on the waiting list at the University of Connecticut. If she is accepted in the program this year, she will receive her master's degree when she is 64 years of age.
Although the plaintiff is presently employed part time, she is willing to accept full employment until she is accepted in the master's program at the University of Connecticut. At that time, she will only accept part-time employment until she obtains her master's degree.
Plaintiff's health is good, although she continued to receive counseling because of the childhood abuse she suffered. She appears to be more employable than the defendant. CT Page 9215
Defendant was employed for 32 years as an air traffic controller for the Federal Aviation Administration. During the air traffic controller's strike, the defendant became involved in an automobile accident which resulted in his being sued by the other party. Because of the accident and the extreme stressful nature of his employment, defendant suffered a major depression resulting in his retirement. It was after this that the parties moved to Connecticut where they had the marital residence constructed.
Presently, defendant receives a monthly pension of approximately $3,588 from his prior employment. He works about six hours a day, one or two days a week, at Holdridge's Nursery and is paid $5.50 per hour. Although defendant obtained a real estate license after he retired, it expired. To renew his license would involve additional education and exams, which defendant feels he could not complete.
Defendant, who is about 61 years of age, suffers from depression and high blood pressure. Defendant is a high school graduate with limited skills other than those of an air traffic controller. His odd jobs at Holdridge's appear to be the extent of his employability.
During the marriage, the parties have accumulated the following assets, excluding motor vehicles, household furnishings and jewelry, which are presently valued at $110,848.46:
 a. U.S. EE Series Bonds — cash value $ 31,632.46 b. Three IRA accounts totaling 34,774.00 c. Niagara Mohawk stocks (jointly owned) 13,804.00 d. Two Charter Oak Credit Union accounts 30,638.00
In addition, the parties are joint owners of the real property, the marital residence which is located at and known as 27 Lynn Drive, Ledyard, Connecticut. The value of said property is $185,000 and is subject to a first mortgage of approximately $29,000.
After considering the factors in Connecticut General Statutes §§ 46b-81 and 46b-82, the following orders are entered which the court finds fair and equitable: CT Page 9216
(1) The defendant shall keep his pension from the Federal Aviation Administration, but shall name the plaintiff as irrevocable beneficiary of same for her lifetime.
(2) The plaintiff shall pay to the plaintiff periodic alimony of $250 per week until her death, remarriage or cohabitation with an unrelated male, whichever is the first to occur.
(3) The plaintiff shall transfer all her right, title and interest in the real property to the defendant within sixty (60) days of this decree. The defendant shall assume any mortgages on said property and hold the plaintiff harmless from any claims thereon. The defendant shall pay to the plaintiff the sum of $65,000 as follows:
(a) $30,000 cash and $10,000 by way of an IRA rollover at the time plaintiff's interest in the real property is transferred to the defendant; $25,000 by way of a promissory note from the defendant to the plaintiff, without interest, payable $15,000 by July 15, 1996, and $10,000 on or before December 1, 1996. If payment of said note is not made as provided, interest shall accrue on the unpaid balance of the note at the rate of 10 percent per annum. Said note shall be secured by a mortgage on the real property.
(4) The plaintiff shall keep the 1994 Honda Civic automobile and hold the defendant harmless from any claims thereon.
(5) The defendant shall keep the 1991 Acura automobile.
(6) The defendant shall receive the brass wood box and the glass-topped outside table and four chairs listed in Appendix A attached to plaintiff's proposed orders submitted to the court.
(7) The plaintiff shall keep the remaining items of personal property on said Appendix A except for the golden retriever, which shall be owned by her daughter, Lynn.
(8) Each party shall keep their respective life insurance policies and the cash values thereof. CT Page 9217
(9) As to the other assets owned by the parties as listed above, the plaintiff shall keep her Professional Financial SVCS IRA account, the U.S. Series EE Bonds in her name, the Niagara Mohawk stocks and $13,745 from the Charter Oak Credit Union account. The defendant shall keep the remaining portion of the assets listed above.
(10) Each party shall be responsible for their own debts without contribution from the other.
(11) Plaintiff shall be entitled, if she is eligible, to COBRA health insurance coverage through defendant's retirement, for as long as she is eligible but at her own expense.
(12) Each party shall pay for their own attorney's fees.
Paul M. Vasington State Trial Referee